**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**EDWARD PATRICK RYAN JR.** and
**TAMMY LYNN RYAN**,
individually and as husband and wife,

Plaintiffs,

v. Civil Action No.: 1:26-cv-00003

**LIBERTY MUTUAL PERSONAL INSURANCE COMPANY** and **LIBERTY INSURANCE CORPORATION**;

Hon. Thomas S. Kleeh, District Judge
Hon. Michael J. Aloi, Magistrate Judge

**CCC INTELLIGENT SOLUTIONS INC**.;

**BODYSHOPBIDS, INC**.,
d/b/a **SNAPSHEET, INC.**;

**ALLCAT CLAIMS SERVICE, LP**;

**CLAIM ASSIST SOLUTIONS** and
**CLAIM ASSIST TECHNOLOGIES LLC**,

Defendants.

---

## PLAINTIFFS' MOTION TO COMPEL FULL AND COMPLETE RESPONSES TO PLAINTIFFS' REQUESTS FOR PRODUCTION TO LIBERTY INSURANCE CORPORATION

---

Plaintiffs move under Federal Rules of Civil Procedure 26, 34, and 37, and Local Rule of Civil Procedure 37.02, for an order compelling Liberty Insurance Corporation to produce documents responsive to Plaintiffs' Requests for Production. Plaintiffs do not seek attorney fees or sanctions.

Liberty has produced objections instead of discovery. It relies on boilerplate, promises future production after a protective order no one has sought, says "none" or "not aware" without showing any real search, and withholds documents as privileged without a proper log. That is not

Rule 34 compliance. This discovery goes to the heart of the case: how Liberty handled the claim, who handled it, what rules governed them, what incentives influenced them, what Allcat did, and what Liberty is withholding. Plaintiffs do not seek fees or sanctions. They seek the documents. The Court should compel Liberty to produce them.

## STATEMENT OF FACTS

1. Liberty served its responses to Plaintiffs' First Set of Interrogatories, Requests for Production, and Requests for Admission on June 1, 2026. **Exhibit 1**.

2. Plaintiffs sent a detailed good-faith letter on June 9, 2026 identifying deficiencies in Liberty's responses and requesting supplementation by June 19, 2026. **Exhibit 2.**

3. The parties stipulated on June 25, 2026 that Plaintiffs' motion-to-compel deadline would be enlarged to July 15, 2026.

4. Plaintiffs file this motion on July 15, 2026.

5. Plaintiffs certify that they attempted in good faith to confer before filing this motion, including by sending the June 9, 2026 good-faith letter pursuant to Federal Rule of Civil Procedure 37(a)(1) and Local Rule 37.02.

## STANDARD OF REVIEW

Rule 34(b)(2)(C) requires an objection to state whether any responsive materials are being withheld on the basis of that objection. The 2015 amendment to Rule 34(b)(2)(C) was intended to end confusion caused when a party states objections while producing some information, leaving the requesting party uncertain whether responsive information has been withheld.

Boilerplate objections are insufficient. A party objecting to discovery cannot rely upon boilerplate objections, but rather they must specify how each interrogatory or request for production is deficient and articulate the particular harm that would accrue if they were required

to respond to the discovery request. *Liguria Foods, Inc. v. Griffith Lab'ys, Inc.*, 320 F.R.D. 168, 186 (N.D. Iowa 2017). Mere recitation that a request is "overly broad, burdensome, oppressive, and irrelevant" does not suffice. *Momah v. Albert Einstein Med. Center*, 164 F.R.D. 412, 417 (E.D. Pa. 1996) (quoting *Josephs v. Harris Corp*., 677 F.2d 985, 992 (3d Cir. 1982)). The burden is on the objecting party to show how each interrogatory or production request is objectionable. *Edeh v. Equifax Info. Servs*., LLC, 2013 WL 1749912, at *3 (D. Minn. Apr. 23, 2013), aff'd, 291 F.R.D. 330 (D. Minn. 2013).

Conditional responses do not comply with Rule 34. Responses made "subject to and without waiving" objections "preserve ... nothing and serve ... only to waste the time and resources of both the Parties and the Court." *Sherwin-Williams Co. v. JB Collision Servs., Inc*., No. 13-CV-1946-LAB WVG, 2014 WL 3388871, at *3 (S.D. Cal. July 9, 2014). Such responses "hide[] the ball" by leaving the requesting party to wonder what documents are produced and what documents are being withheld. *Athridge v. Aetna Cas. & Sur. Co*., 184 F.R.D. 181, 190 (D. D.C. 1998).

A party cannot withhold discovery based on generalized confidentiality or proprietary objections. "There is no blanket privilege for proprietary information or trade secrets." *Paull Assocs. Realty, LLC v. Lexington Ins. Co*., No. 5:13-CV-80, 2014 WL 12596397, at *3 (N.D.W. Va. Jan. 9, 2014). Before a protective order can be granted, the moving party must show specific good cause. *TC/Am. Monorail, Inc. v. Custom Conveyor Corp*., 840 N.W.2d 414, 420 (Minn. 2013).

A party that says documents do not exist must make a reasonable inquiry and state enough information to show diligence. "[I]f no responsive documents or tangible things exist, the responding party should so state with sufficient specificity to allow the Court to determine whether

the party made a reasonable inquiry and exercised due diligence." *Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014).

A party may not avoid discovery through semantic narrowing. A party objecting that discovery is vague or ambiguous bears the burden to show vagueness. *Heller v. City of Dallas*, 303 F.R.D. 466, 491-92 (N.D. Tex. 2014). A party has a duty to exercise reason and common sense in attributing normal definitions to terms in discovery requests. *Smash Tech., LLC v. Smash Sols., LLC*, 335 F.R.D. 438, 449 (D. Utah 2020). Discovery is not a game of semantics. *Neale v. Coloplast Corp.*, No. 1:18-cv-00274-TRM-SKL, 2020 WL 6948361, at *4 (E.D. Tenn. Nov. 2, 2020).

If documents are withheld on privilege grounds, Liberty must serve a privilege log. Fed. R. Civ. P. 26(b)(5)(A)(ii) requires a privilege log that enables other parties to assess the applicability of the privilege or protection. A privilege log "must set forth specific facts which, taken as true, establish the elements of the privilege for each document for which privilege is claimed," including "the nature of each document, the date of its transmission or creation, the author and recipients, the subject, and the privilege asserted." *Clark v. Unum Life Ins. Co. of Am.*, 799 F. Supp. 2d 527, 536 (D. Md. 2011). The log must provide information sufficient to permit an "intelligent determination about the validity of the assertion of the privilege." *Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 232-33 (S.D.W. Va. 2015). Liberty's Responses to Plaintiffs' Requests for Production Do Not Comply with Rule 34.

**REQUEST NO. 8:** Produce all instructions provided to adjusters on the investigation and evaluation of the homeowners claim.

**RESPONSE:** LIC objects to this Interrogatory as vague in that it is not clear what is meant by "instructions". Subject to and without waiving this objection and in LIC's interpretation of "instructions", LIC refers Plaintiffs to the guidelines and policies and procedures that will be produced as referenced in response to other Requests for Production below. LIC also refers to the contractual agreements between Liberty Mutual and Allcat.

Liberty's response is defective. It calls the request an "Interrogatory," objects to "instructions" as vague, and then points to documents that "will be produced" later. The response does not state what has been produced, what has been withheld, or whether production is complete.

Instructions to adjusters are relevant to claim handling. Claims manuals and training materials are routinely discoverable in insurance bad-faith litigation. *Tustin v. Motorists Mut. Ins. Co.*, 668 F. Supp. 2d 755, 761-62 (N.D.W. Va. 2009) stated: "There is no reason to seal documents from the claims manual. These documents were disclosed during discovery and are a part of discovery in most, if not all, insurance bad faith cases." *Williamson v. Liberty Mut. Fire Ins. Co.*, No. 3:15-CV-07812, 2015 WL 8489980, at *2 (S.D.W. Va. Dec. 9, 2015) ordered Liberty Mutual to produce claims manuals, policy manuals, policy statements, and other documents regarding processing first-party fire loss claims. Training materials may show whether the insurer's actions were inconsistent with its own procedures. *United States Roller Works, Inc. v. State Auto Prop. & Cas. Ins. Co.*, No. 3:16-cv-2827, 2018 WL 4095058, at *2 (M.D. Tenn. Aug. 28, 2018).

Liberty should produce the instructions, manuals, guidelines, policies, procedures, and Allcat-related instructions that governed this claim. The Court should compel full production.

**REQUEST NO. 11:** Produce all field work testing, analysis, audit, quality assurance, and survey materials related to the homeowners claim.

**RESPONSE:** None.

A bare "None" is not enough. If no responsive documents exist, the responding party must say so "with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014). Liberty must identify who searched, what was searched, whether Allcat was asked, and whether any quality assurance, audit, or review materials exist outside Liberty's formal

claim file. The Court should compel Liberty to provide a search certification and produce responsive materials if located.

**REQUEST NO. 14:** Produce the tax identification numbers for all vendors retained by Liberty Mutual in connection with the homeowners claim.

**RESPONSE:** LIC objects to this Request as not seeking information which is either relevant or reasonably calculated to lead to the discovery of admissible information. LIC also objects to this Request as it seeks confidential and proprietary information. Subject to and without waiving these objections, LIC refers Plaintiffs to Liberty-002421 which contains Build with MD's tax identification number.

Liberty produced only Build With MD’s tax identification number. The request seeks tax identification numbers for all vendors retained in connection with the claim, including Allcat and any other vendor or independent adjuster paid in connection with the homeowners claim. The good-faith letter requested that Liberty produce tax identification numbers for Allcat, Claim Assist, and all other vendors and independent adjusters retained in connection with the homeowners claim, or confirm that no vendors beyond Build With MD were paid. The Court should compel Liberty to produce the remaining vendor tax identification numbers or state under oath that none exist after reasonable inquiry.

**REQUEST NO. 15:** Produce all written, e-mail, and electronic correspondence between Liberty Mutual's Home Office and/or any other internal department concerning the handling of the homeowners claim.

**RESPONSE:** LIC objects to this Request to the extent it seeks post-suit privileged information protected under the attorney-client privilege and/or the work product doctrine. LIC also objects to this Request as not seeking information which is either relevant or reasonably calculated to lead to the discovery of admissible information. Subject to and without waiving these objections, the only potentially responsive documents would be post-suit communications which are privileged. Because it is not clear that this Request actually seeks such post-suit communications, which would clearly not be discoverable, LIC has not at this time prepared a privilege log regarding the same.

Liberty’s response is improper. Plaintiff requests claim diary entries, internal and external emails, written and electronic correspondence between Liberty Mutual Home Office and/or

Liberty Mutual's other internal-department(s) concerning the handling of the claim. The inquiry is not limited to post-suit communications. Pre-suit internal claim-handling communications are also discoverable, and claim-handling materials outside the formal claim file are not immune from discovery. "Plainly, any information [the insurer] has regarding its handling of the claim will tend to prove or disprove [the bad-faith] allegation. This is true regardless of whether the information is within or outside the claim file." *Sell v. Country Life Ins*., 189 F. Supp. 3d 925, 932-33 (D. Ariz. 2016). *Comput. Sci. Corp. v. Endurance Risk Sols. Assurance Co*., No. 20-cv-01580, 2022 WL 1192782, at *2 (S.D.N.Y. Mar. 10, 2022) rejected the insurer's argument that emails outside the claim file were unnecessary and burdensome and held that "all documents, wherever maintained, regarding [the insurer's] handling of Plaintiff's claim [were] clearly relevant."

The West Virginia Supreme Court of Appeals has recognized that "in the context of first-party bad faith actions against insurers, courts generally agree that the attorney-client privilege/work product rules do not attach to an insured's file because the insurer created the file primarily on behalf of the insured." *State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W. Va. 358, 370 n.17, 508 S.E.2d 75, 87 n.17 (1998). In a first-party case, "the interest of the insured and insurer are actually presumptively in conflict." *Id*. An insurer cannot invoke a protection premised on the insured's benefit against the very insured it created the file to serve.

To the extent first-party bad faith litigation may allow some work product protection to be claimed, as *State of West Virginia ex rel. Allstate Ins. Co. v. Madden*, 215 W. Va. 705, 601 S.E.2d 25 (2004), recognizes, the insurer must still demonstrate that protection document by document through *in camera* examination. *Id*. The Court in *Madden* required *in camera* review precisely because blanket assertions are insufficient. Esurance has not sought *in camera* review. Plaintiff moves the Court for an in camera review of all withheld materials.

Even post-suit claim-handling conduct may be discoverable in a West Virginia bad-faith case. "[T]he conduct of an insurance company ... during the pendency of a lawsuit may support a cause of action under the West Virginia Unfair Trade Practices Act." Syllabus Point 9, *Barefield v. DPIC Companies, Inc*., 215 W.Va. 544, 600 S.E.2d 256 (2004). If Liberty withholds documents as privileged, Rule 26(b)(5)(A) requires a privilege log. *Clark v. Unum Life Ins. Co. of Am*., 799 F. Supp. 2d 527, 536 (D. Md. 2011); *Johnson v. Ford Motor Co*., 309 F.R.D. 226, 232-34 (S.D.W. Va. 2015).

Failure to produce a timely and adequate privilege log may constitute a waiver of the claimed privilege.[1] A significant number of courts hole that such a failure automatically results in waiver: "Failure to assert the privilege properly in conformity with the Federal Rules, results in waiver of any and all objections based upon attorney-client privilege and/or attorney work-product doctrine."[2] At a minimum, the withheld materials should be examined *in camera*.

Liberty's statement that it "has not at this time prepared a privilege log" does not comply with the Rule. The Court should compel Liberty to produce the requested materials.

**REQUEST NO. 22:** Produce the personnel files for all claims employees who participated in the handling of the homeowners claim and who are identified in Defendant's Rule 26(a)(1) disclosures or in Defendant's answers to the above interrogatories, including but not limited to Shawn Patrick McKnight, Mark Anthony Edmondson, Shermica J. Porter, Daniel Scott Weakly, Kristina

---

[1] *Phoenix Process Equip. Co. v. Cap. Equip. Trading Corp*., No. 3:16-CV-00024-CHB. 2-21 WL 1062553 at *14 (W.D. Ky. Mar. 19, 2021)(citing, *McCall v. Proctor & Gamble Co*., No. 1:17-cv-406, 2019 WL 3997375 at *8 (S.D. Ohio Aug. 22, 2019); *S.E.C. v. Yorkville Advisors, L.L.C*., 300 F.R.D. 152, 157-58 (S.D.N.Y. 2014); *Monterey Commc'ns, L.L.C. v. Atl. Tele-Network Int'l, Inc. No. 119CV00015RAMGWC*, 2021 WL7707265, at *5(D.V.I. Apr. 22, 2021)("To avoid possible waiver, [assertions of privilege] must contain the additional information identified in [Rule 26(b)5]."(alterations in original)(quoting *Hall v. Sullivan*, 231 F.R.D. 468, 474 (D.Md. 2005))).

[2] *Petro Indus. Sols., L.L.C. v. Island Project & Operating Servs., L.L.C*., No. 121CV00312WALEAH, 2023 WL 3864587 at *2 (D.V.I. June 7, 2023)(citing, *Montererey Commc'ns, K.K.C. v. Atl Tele-Network Int'l, Inc*., No. 1:19-cv-00015, 2021 WL 7707265 at *5 (D.V.I. Apr. 22, 2021; see *Brown v. Barnes & Noble, Inc*., 474 F. Supp. 3d 637, 646 (S.D.N.Y. 2019)(citing *FG Hemisphere Assocs., L.L.C. v. Republique Du Congo*, No. 01 Civ. 8700, 2005 WL 545218 at *6 (S.D.N.Y. Mar. 8, 2005)).

Atkinson, Candace Thorn, Cicely Hunter, Don Bannister, Leanne Daley, Sheree Banks, and Warren Todd Waggoner. Please redact social security numbers and other personal identification information not relevant to this litigation.

**RESPONSE:** LIC objects to this Request as not seeking information which is either relevant or reasonably calculated to lead to the discovery of admissible information. LIC also objects to this Request in that the burden of providing this information is disproportionate to the issues in this action. LIC also objects to this Request as overly broad, unduly burdensome, and not relevant. LIC also objects to this Request as it seeks confidential and proprietary information. LIC objects to this Request as it seeks information beyond the control of LIC. Subject to and without waiving these objections, LIC states that it did not maintain personnel files for those adjusters employed by Allcat or independent adjusters. LIC will produce the properly redacted personnel files of Leanne Daley, Sheree Banks, and Warren Todd Waggoner upon the entry of an appropriate Protective Order.

Personnel-file materials for claim handlers are discoverable when limited to matters bearing on claim handling, training, discipline, performance, and incentive structures. In *Allman v. CMFG Life Ins. Co.*, the Northern District of West Virginia held that "the employee's personnel file was clearly relevant insofar as the employee handled, adjusted, or administered the claim for insurance benefits which was at issue." No. 5:20CV220, 2021 WL 9666795, at *12 (N.D.W. Va. July 8, 2021) (citing *Weller v. Am. Home Assur. Co*., No. 3:05-cv-90, 2007 WL 1097883, at *6 (N.D. W.Va. Apr. 10, 2007)).

Liberty also cannot avoid production of Allcat adjuster materials by saying it does not maintain those files. If Liberty has the legal right or practical ability to obtain responsive materials from Allcat, those materials are within Rule 34 control. Bonus programs may also provide evidence of claim-handler motivation. Bonus programs may provide evidence of the motivation of claims personnel in evaluating a claim. *Lyon v. Bankers Life and Cas. Co*., No. CIV. 09-5070-JLV, 2011 WL 124629, at *10 (D.S.D. Jan. 14, 2011). "Qualifying for a monetary bonus, or other employee incentive, because of the manner in which defendant's employees respond to a claim, is certainly relevant to a bad faith claim." *Id*. The Court should compel production of responsive personnel-file materials, with personal identifiers redacted.

**REQUEST NO. 23:** Produce all Variable Incentive Plan documents, including all versions of the plan in effect during the time period of the homeowners claim.

**RESPONSE:** LIC objects to this Request as not seeking information which is either relevant or reasonably calculated to lead to the discovery of admissible information. LIC also objects to this Request in that the burden of providing this information is disproportionate to the issues in this action. LIC also objects to this Request as overly broad, unduly burdensome, and not relevant as it seeks identification of items which were not in effect at the time of Plaintiffs' claim. The Variable Incentive Plan was not in effect during the handling of Plaintiffs' homeowners' claim. LIC also objects to this Request as it seeks confidential and proprietary information. Subject to and without waiving these objections, LIC states that the plan that replaced the Variable Incentive Plan and was in effect at the time of Plaintiffs' claim was called Liberty Short-term Incentive Plan. LIC will produce the Liberty Short-term Incentive Plan in effect from the date of loss to January of 2026 upon the entry of an appropriate Protective Order.

**REQUEST NO. 24:** Produce all documents setting forth the formula and calculations for Variable Incentive Plan awards as applicable to claims employees who handled the homeowners claim.

**RESPONSE:** LIC objects to this Request as not seeking information which is either relevant or reasonably calculated to lead to the discovery of admissible information. LIC also objects to this Request in that the burden of providing this information is disproportionate to the issues in this action. LIC also objects to this Request as overly broad, unduly burdensome, and not relevant as it seeks identification of items which were not in effect at the time of Plaintiffs' claim. The Variable Incentive Plan was not in effect during the handling of Plaintiffs' homeowners' claim. LIC also objects to this Request as it seeks confidential and proprietary information. Subject to and without waiving these objections, LIC states that the plan that replaced the Variable Incentive Plan and was in effect at the time of Plaintiffs' claim was called Liberty Short-term Incentive Plan. LIC will produce the Liberty Short-term Incentive Plan in effect from the date of loss to January of 2026 upon the entry of an appropriate Protective Order.

**REQUEST NO. 25:** Produce all summary plan documents describing the eligibility criteria and award structure of the Variable Incentive Plan as applicable to claims employees who handled the homeowners claim.

**RESPONSE:** LIC objects to this Request as not seeking information which is either relevant or reasonably calculated to lead to the discovery of admissible information. LIC also objects to this Request in that the burden of providing this information is disproportionate to the issues in this action. LIC also objects to this Request as overly broad, unduly burdensome, and not relevant as it seeks identification of items which were not in effect at the time of Plaintiffs' claim. The Variable Incentive Plan was not in effect during the handling of Plaintiffs' homeowners' claim. LIC also objects to this Request as it seeks confidential and proprietary information. Subject to and without waiving these objections, LIC states that the plan that replaced the Variable Incentive Plan and was in effect at the time of Plaintiffs' claim was called Liberty Short-term Incentive Plan. LIC will produce the Liberty Short-term Incentive Plan in effect from the date of loss to January of 2026 upon the entry of an appropriate Protective Order.

**REQUEST NO. 26:** Produce all documents reflecting the actual Variable Incentive Plan bonus amounts paid to each claims employee who handled the homeowners claim, for each bonus period applicable to the time period of the homeowners claim.

**RESPONSE:** LIC objects to this Request as not seeking information which is either relevant or reasonably calculated to lead to the discovery of admissible information. LIC also objects to this Request in that the burden of providing this information is disproportionate to the issues in this action. LIC also objects to this Request as overly broad, unduly burdensome, and not relevant as it seeks identification of items which were not in effect at the time of Plaintiffs' claim. The Variable Incentive Plan was not in effect during the handling of Plaintiffs' homeowners' claim. LIC also objects to this Request as it seeks confidential and proprietary information. Subject to and without waiving these objections, LIC states that the plan that replaced the Variable Incentive Plan and was in effect at the time of Plaintiffs' claim was called Liberty Short-term Incentive Plan. LIC will produce the information sought as to the Liberty Short-term Incentive Plan related to Leanne Daley, Sheree Banks, and Warren Todd Waggoner from the date of loss to January of 2026 upon the entry of an appropriate Protective Order.

**REQUEST NO. 27:** Produce all documents related to any other adjuster, supervisor, or manager bonus, profit sharing, or performance incentive plan - in addition to the Variable Incentive Plan - in effect for claims employees who handled the homeowners claim.

**RESPONSE:** LIC objects to this Request as not seeking information which is either relevant or reasonably calculated to lead to the discovery of admissible information. LIC also objects to this Request in that the burden of providing this information is disproportionate to the issues in this action. LIC also objects to this Request as overly broad, unduly burdensome, and not relevant as it seeks identification of items which were not in effect at the time of Plaintiffs' claim. The Variable Incentive Plan was not in effect during the handling of Plaintiffs' homeowners' claim. LIC also objects to this Request as it seeks confidential and proprietary information. Subject to and without waiving these objections, LIC states that the plan that replaced the Variable Incentive Plan and was in effect at the time of Plaintiffs' claim was called Liberty Short-term Incentive Plan. LIC will produce the Liberty Short-term Incentive Plan in effect from the date of loss to January of 2026 upon the entry of an appropriate Protective Order.

Incentive-plan materials are relevant to bad faith where claim personnel compensation may relate to claim outcomes, profitability, loss ratios, combined ratios, or business-unit goals. Performance and compensation-related documents, including bonus program materials, were ordered produced in *Allman v. CMFG Life Ins. Co.*, No. 5:20CV220, 2021 WL 9666795, at *10 (N.D.W. Va. July 8, 2021). *Barten v. State Farm Mut. Auto. Ins. Co*., No. CV-23-00267-TUC-CKJ (MSA), 2024 WL 2890246, at *2 (D. Ariz. June 10, 2024) ordered production of "information about financial incentives that Defendant might offer to employees who deny more claims,"

including "economic performance measures, combined ratio goals, and severity goals." *Lyon v. Bankers Life and Cas. Co.*, No. CIV. 09-5070-JLV, 2011 WL 124629, at *10 (D.S.D. Jan. 14, 2011), held that monetary bonus or employee-incentive information tied to claim responses is relevant to a bad-faith claim.

Liberty admits the Liberty Short-term Incentive Plan replaced the Variable Incentive Plan and was in effect during the claim. It should produce the responsive plan documents without conditioning production on a protective order. The Court should compel production of responsive incentive-plan materials for all claim personnel who handled the homeowners claim.

**REQUEST NO. 28:** Produce all claims handling manuals and desk books governing the adjustment of homeowners structural damage claims that were in effect at the time of the homeowners claim.

**RESPONSE:** LIC objects to this Request as not seeking information which is either relevant or reasonably calculated to lead to the discovery of admissible information. LIC also objects to this Request in that the burden of providing this information is disproportionate to the issues in this action. LIC also objects to this Request as overly broad, unduly burdensome, and not relevant as it seeks production of items which were not applicable to West Virginia, first party, homeowners' claims. LIC also objects to this Request as it seeks confidential and proprietary information. Subject to and without waiving these objections, LIC will produce manuals applicable to the handling of West Virginia, first party, homeowners' claims from the date of loss to January of 2026 upon the entry of an appropriate Protective Order.

**REQUEST NO. 29:** Produce all policies and procedures governing the adjustment of homeowners personal property claims under Coverage C that were in effect at the time of the homeowners claim.

**RESPONSE:** LIC objects to this Request as not seeking information which is either relevant or reasonably calculated to lead to the discovery of admissible information. LIC also objects to this Request in that the burden of providing this information is disproportionate to the issues in this action. LIC also objects to this Request as overly broad, unduly burdensome, and not relevant as it seeks production of items which were not applicable to West Virginia, first party, homeowners' claims. LIC also objects to this Request as it seeks confidential and proprietary information. Subject to and without waiving these objections, LIC will produce policies and procedures applicable to the handling of West Virginia, first party, homeowners' claims under Coverage C from the date of loss to January of 2026 upon the entry of an appropriate Protective Order.

**REQUEST NO. 30:** Produce all policies and procedures governing the adjustment of homeowners loss of use claims under Coverage D that were in effect at the time of the homeowners claim.

**RESPONSE:** LIC objects to this Request as not seeking information which is either relevant or reasonably calculated to lead to the discovery of admissible information. LIC also objects to this Request in that the burden of providing this information is disproportionate to the issues in this action. LIC also objects to this Request as overly broad, unduly burdensome, and not relevant as it seeks production of items which were not applicable to West Virginia, first party, homeowners' claims. LIC also objects to this Request as it seeks confidential and proprietary information. Subject to and without waiving these objections, LIC will produce policies and procedures applicable to the handling of West Virginia, first party, homeowners' claims under Coverage D from the date of loss to January of 2026 upon the entry of an appropriate Protective Order.

**REQUEST NO. 31:** Produce all training materials related to the adjustment of homeowners claims arising from tornado or catastrophic weather events in West Virginia that were in effect at the time of the homeowners claim.

**RESPONSE:** LIC objects to this Request as not seeking information which is either relevant or reasonably calculated to lead to the discovery of admissible information. LIC also objects to this Request in that the burden of providing this information is disproportionate to the issues in this action. LIC also objects to this Request as overly broad, unduly burdensome, and not relevant as it seeks production of items which were not applicable to West Virginia, first party, homeowners' claims. LIC also objects to this Request as it seeks confidential and proprietary information. Subject to and without waiving these objections, LIC will produce training materials applicable to the handling of West Virginia, first party, homeowners' claims arising from tornado or catastrophic weather events from the date of loss to January of 2026 upon the entry of an appropriate Protective Order.

**REQUEST NO. 32:** Produce all training materials, guidelines, and procedures governing the application of any roof payment schedule, roof depreciation schedule, or similar valuation limitation to wind or storm damage claims that were in effect at the time of the homeowners claim.

**RESPONSE:** LIC objects to this Request as not seeking information which is either relevant or reasonably calculated to lead to the discovery of admissible information. LIC also objects to this Request in that the burden of providing this information is disproportionate to the issues in this action. LIC also objects to this Request as overly broad, unduly burdensome, and not relevant as it seeks production of items which were not applicable to West Virginia, first party, homeowners' claims. LIC also objects to this Request as it seeks confidential and proprietary information. Subject to and without waiving these objections, LIC will produce those items applicable to the handling of West Virginia, first party, homeowners' claims from the date of loss to January of 2026 upon the entry of an appropriate Protective Order.

Claims manuals, policies, procedures, and training materials are central bad-faith discovery and are routinely produced in insurance bad-faith cases. *Tustin v. Motorists Mut. Ins. Co.*, 668 F. Supp. 2d 755, 761-62 (N.D.W. Va. 2009); *Williamson v. Liberty Mut. Fire Ins. Co.*, No. 3:15-CV-

07812, 2015 WL 8489980, at *2 (S.D.W. Va. Dec. 9, 2015); *Sheppard v. Direct Gen. Ins. Co*., No. 3:16-CV-11418, 2017 WL 5998756, at *3 (S.D.W. Va. Dec. 4, 2017).

Training materials bearing on whether an insurer followed or departed from its own claim procedures are relevant to bad faith. *United States Roller Works, Inc. v. State Auto Prop. & Cas. Ins. Co*., No. 3:16-cv-2827, 2018 WL 4095058, at *2 (M.D. Tenn. Aug. 28, 2018). This discovery is foundational to a WVUTPA claim because the evidence must establish that the violations arise from a habit, custom, usage, or business policy of the insurer. *Stonewall Jackson Mem'l Hosp. v. American United Life Ins. Co*., 206 W.Va. 458, 465, 525 S.E.2d 649, 656 (1999).

Liberty's objections are boilerplate and unsupported. The Court should compel production of responsive manuals, policies, procedures, and training materials.

**REQUEST NO. 33:** Produce the complete, unmodified field inspection report and estimate prepared by Shawn Patrick McKnight in connection with his April 28, 2025 inspection of 102 Falling Water Lane, Morgantown, West Virginia.

**RESPONSE:** LIC objects to this Request as it seeks information beyond the control of LIC. Subject to and without waiving this objection, LIC refers Plaintiffs to Bates Numbers Liberty-002029 - 002046, 002048 - 002087, 002113 - 002122, 002204 - 002207, 001701 - 001780, 001859 - 001862, which is the only field inspection report prepared by Shawn Patrick McKnight in LIC's possession or control.

**REQUEST NO. 34:** Produce all photographs taken by Shawn Patrick McKnight during his April 28, 2025 inspection of 102 Falling Water Lane.

**RESPONSE:** LIC objects to this Request as it seeks information beyond the control of LIC. Subject to and without waiving this objection, LIC refers Plaintiffs to Bates Numbers Liberty-Liberty-002029 - 002046, 002048 - 002087, 002113 - 002122, 002204 - 002207, 001701 - 001780, 001859 - 001862, which is the only photographs taken by Shawn Patrick McKnight in LIC's possession or control.

Liberty must make a reasonable effort to obtain McKnight's complete file from Allcat. Liberty retained Allcat, and Allcat retained McKnight. If Liberty has the practical ability or legal right to obtain McKnight's materials, they are within Liberty's Rule 34 control. *U.S. v. Skeddle*, 176 F.R.D. 258, 261 n. 5 (N.D.Ohio 1997) (citations omitted); citing, *Scott v. Arex*, 124 F.R.D. 39,

41 (D.Conn.1989) ("The word 'control' is to be broadly construed," such that "[a] party controls documents that it has the right, authority, or ability to obtain on demand."); Gary J. Mennitt, *Document Discovery: Possession, Custody or Control*, 214 N.Y.L.J. 214 (Nov. 21, 1995). Therefore, "under Rule 34, 'control' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability, to obtain the documents from a non-party to the action." *Bank of New York v. Meridien BIAO Bank Tanzania, Ltd.*, 171 F.R.D. 135, 146 (S.D.N.Y.1997), citing, *In re NASDAQ Market–Makers Antitrust Litigation*, 169 F.R.D. 493, 530 (S.D.N.Y.1996), citing *Golden Trade S.r.L. v. Lee Apparel Co*., 143 F.R.D. 514, 525 (S.D.N.Y.1992); *Scott v. Arex, Inc*., *supra* at 41; *M.L.C., Inc. v. North American Philips Corp*., 109 F.R.D. 134, 136 (S.D.N.Y.1986).

The good-faith letter specifically demanded that Liberty confirm what steps it took to obtain McKnight's complete, unmodified field inspection report and photographs from Allcat and whether the Bates range Liberty-002029-002087 constituted McKnight's complete, unmodified file. The Court should compel Liberty to request and produce McKnight's complete, unmodified report, estimate, photographs, and related materials.

**REQUEST NO. 40:** Produce all internal Allcat audit and quality assurance reviews of any field estimate or work product generated in connection with the homeowners claim.

**RESPONSE:** LIC objects to this Request as it seeks information beyond the control of LIC. Subject to and without waiving this objection, LIC is not aware of any.

Liberty's "not aware" response is not sufficient. A bare assertion that no materials exist is insufficient without an explanation of the reasonable inquiry conducted. *Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014). Liberty must identify who searched, whether Allcat was asked, and whether Liberty has contractual rights to obtain Allcat audit or quality assurance

materials. The Court should compel Liberty to make a reasonable inquiry and produce responsive materials.

**REQUEST NO. 42:** Produce all contracts, master service agreements, and statements of work between Allcat Claims Service, LP and Liberty Insurance Corporation applicable to the time period of the homeowners claim.

**RESPONSE:** LIC objects to this Request as not seeking information which is either relevant or reasonably calculated to lead to the discovery of admissible information. LIC also objects to this Request in that the burden of providing this information is disproportionate to the issues in this action. LIC also objects to this Request as overly broad, unduly burdensome, and not relevant as it seeks production of items which were not applicable to West Virginia, first party, homeowners' claims. LIC also objects to this Request as it seeks confidential and proprietary information. Subject to and without waiving these objections, LIC will produce such items from the date of loss to January of 2026 upon the entry of an appropriate Protective Order.

The Allcat contracts are relevant because Allcat participated in the claim handling. The agreements may show scope of work, assignment procedures, performance standards, payment structures, indemnity savings metrics, quality assurance obligations, and Liberty's right to obtain Allcat materials. The good-faith letter identifies Allcat contracts, including performance metrics, indemnity savings targets, and fee structures as directly relevant to Plaintiffs' bad-faith claims and systemic undervaluation theory.

Liberty cannot condition production on a protective order that does not exist. "There is no blanket privilege for proprietary information or trade secrets." *Paull Assocs. Realty, LLC v. Lexington Ins. Co*., No. 5:13-CV-80, 2014 WL 12596397, at *3 (N.D.W. Va. Jan. 9, 2014). The Court should compel production.

**REQUEST NO. 47:** Produce all materials relating to programs at Liberty Mutual aimed at reducing "leakage" (i.e., reducing the amount of money paid out on claims) applicable to homeowners claims handling in West Virginia during the time period of the homeowners claim.

**RESPONSE:** LIC objects to this Request as not seeking information which is either relevant or reasonably calculated to lead to the discovery of admissible information. LIC also objects to this Request as overly broad and unduly burdensome. Subject to and without waiving these objections, LIC states no such materials exist.

**REQUEST NO. 48:** Produce all materials relating to programs at Liberty Mutual aimed at reducing the combined ratio or loss ratio in connection with homeowners claims handling in West Virginia during the time period of the homeowners claim.

**RESPONSE:** LIC objects to this Request as not seeking information which is either relevant or reasonably calculated to lead to the discovery of admissible information. LIC also objects to this Request as overly broad and unduly burdensome. Subject to and without waiving these objections, LIC states no such materials exist.

**REQUEST NO. 49:** Produce all materials regarding any management-level redesign, restructuring, or modernization of Liberty Mutual's homeowners or property claims operations directed, performed, or recommended by any management consulting firm, to the extent relevant to the claims handling practices, vendor relationships, or financial incentive structures at issue in this litigation.

**RESPONSE:** LIC objects to this Request as not seeking information which is either relevant or reasonably calculated to lead to the discovery of admissible information. LIC also objects to this Request in that the burden of providing this information is disproportionate to the issues in this action. LIC also objects to this Request as overly broad and unduly burdensome. LIC also objects to this Request as it seeks confidential and proprietary information.

Liberty's responses do not show a reasonable search. If no responsive documents exist, the responding party must say so "with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014).

Leakage, combined ratio, loss ratio, and management-consulting materials[3] are relevant to Plaintiffs' systemic claim-handling theory and Liberty's incentive structures. *Barten v. State Farm*

[3] These kinds of materials are routinely the subject of discovery in bad faith cases. *Sims v. State Farm Mut. Auto. Ins.*, No. 4:13-CV-00371 JLH, 2014 WL 12650652, at *4, *7 (E.D. Ark. Apr. 30, 2014) (compelling production of documents related to ACE program as "they relate to the handling of underinsured motorist claims in Arkansas"); *Barten*, 2013 WL 4046700, at *2 (compelling production of "the documentation of programs that were informed by or grew out of the original ACE principles"); *Akins v. State Farm Mut. Auto. Ins.*, No. 10-CV-12755, 2011 WL 3204839, at *5, *7 (E.D. Mich. July 28, 2011) (compelling production of ACE program documents); *Chauvin*, 2011 WL 1810625, at *2–*3 (allowing production of Michigan ACE file documents); Order, *Armisted v. State Farm Mut. Auto. Ins.*, No. 2:07-CV-10259 (E.D. Mich Feb. 26, 2008) (ordering production of Michigan ACE program documents and "each report, blue book, paper or document ... produced by or contributed to by McKinsey"), ECF No. 69; *Van Emon v. State Farm Mut. Auto. Ins.*, No. 05-CV-72638, 2008 WL 205243, at *2, *7 (E.D. Mich. Jan. 24, 2008) (affirming magistrate judge's order requiring production of documents regarding ACE

*Mut. Auto. Ins. Co*., No. CV-23-00267-TUC-CKJ (MSA), 2024 WL 2890246, at *2 (D. Ariz. June 10, 2024) ordered production of financial-incentive materials including “economic performance measures, combined ratio goals, and severity goals.”

If no documents exist, Liberty must identify who searched, what systems were searched, what custodians were searched, and whether managers or executives with homeowners-claims financial responsibility were searched. The Court should compel production or a sworn no-documents certification.

**REQUEST NO. 57:** Produce the policy provision, endorsement, or other contractual document setting forth the Roof Payment Schedule applied to the homeowners claim.

**RESPONSE:** LIC did not apply a "Roof Payment Schedule" to Plaintiffs' homeowners claim.

**REQUEST NO. 58:** Produce all internal guidelines and procedures governing the application of the Roof Payment Schedule to homeowners wind or storm damage claims in West Virginia.

**RESPONSE:** LIC objects to this Request as not seeking information which is either relevant or reasonably calculated to lead to the discovery of admissible information. LIC also objects to this Request in that the burden of providing this information is disproportionate to the issues in this action. LIC also objects to this Request as overly broad, unduly burdensome, and not relevant as it seeks production of items which were not applied to Plaintiffs' claim. LIC also objects to this Request as it seeks confidential and proprietary information.

**REQUEST NO. 59:** Produce all communications regarding the decision to apply the Roof Payment Schedule to the homeowners claim.

**RESPONSE:** LIC did not apply a "Roof Payment Schedule" to Plaintiffs' homeowners claim.

---

program). Another significant appellate ruling ordering production of the management consulting redesign documents is *Jacobsen v. Allstate Ins. Co*., 351 Mont. 464 (2009). The Montana Supreme Court held that the district court abused its discretion in denying the plaintiff's motions to compel discovery of Allstate's pre-implementation CCPR study (i.e., the McKinsey documents) even though the discovery deadline had passed. The Court reasoned that the McKinsey documents were squarely within the plaintiff's original discovery request and were critical to his theory regarding bad faith. The Court directed the district court on remand to compel production of the McKinsey documents. On remand, the McKinsey documents were produced and the plaintiff used them to support class action claims alleging that Allstate's CCPR program violated Montana's Unfair Trade Practices Act.[3]

**REQUEST NO. 60:** Produce all documents comparing the payment issued under the Roof Payment Schedule to the estimated cost of full roof replacement as recommended by field adjuster Shawn Patrick McKnight.

**RESPONSE:** LIC did not apply a "Roof Payment Schedule" to Plaintiffs' homeowners claim.

Liberty's responses avoid the substance of the requests by deliberately misinterpreting the phrase "Roof Payment Schedule" The discovery uses "Roof Payment Schedule" to refer to any policy provision, endorsement, contractual term, guideline, depreciation method, payment factor, valuation limitation, or similar roof-specific methodology used to limit or calculate payment for the roof component of Plaintiffs' homeowners claim.

A responding party may not avoid answering a request by re-styling it as a narrower question or relying on semantic ambiguity. *Heller v. City of Dallas*, 303 F.R.D. 466, 491 (N.D. Tex. 2014); *Smash Tech., LLC v. Smash Sols., LLC*, 335 F.R.D. 438, 449 (D. Utah 2020). If Liberty did not use the label "Roof Payment Schedule," it must produce documents reflecting whatever roof depreciation, valuation limitation, age/condition factor, policy limitation, or payment methodology was used. The Court should compel Liberty to produce documents responsive to the substance of Request Nos. 57 through 60.

**REQUEST NO. 62:** Produce all documents and communications related to any decision by Liberty Mutual not to investigate or pay the personal property (Coverage C) component of the homeowners claim.

**RESPONSE:** LIC did not make a decision not to investigate or pay the personal property component of the homeowners' claim.

Liberty's response is evasive. Plaintiffs seek documents relating to Coverage C handling or non-handling. Liberty's characterization that it did not decide not to investigate or pay Coverage C does not eliminate responsive documents about what was done, not done, considered, or decided. Any information an insurer has regarding its handling of the claim is discoverable because it tends to prove or disprove bad faith, "regardless of whether the information is within or outside the claim

file." *Sell v. Country Life Ins.*, 189 F. Supp. 3d 925, 932-33 (D. Ariz. 2016). The Court should compel Liberty to produce all documents concerning Coverage C investigation, evaluation, payment, non-payment, delay, or closure.

**REQUEST NO. 67:** Produce all documents identified in your answers to the above interrogatories that have not already been produced in response to a preceding Request for Production.

**RESPONSE:** None.

Liberty's response is premature and inconsistent with its other responses. Liberty's interrogatory answers reference documents, training transcripts, contracts, manuals, policies, procedures, and future productions that had not yet been produced. The good-faith letter notes that Liberty's interrogatory answers referenced training transcripts, contracts, policies, procedures, and other documents that had not yet been produced, making Liberty's "None" response to RFP No. 67 premature and inconsistent with its other discovery responses. The Court should compel Liberty to supplement Request No. 67 after producing all documents identified in its interrogatory answers.

## CONCLUSION

Plaintiffs request an order compelling Liberty to produce responsive documents to Request Nos. 7, 8, 11, 14, 15, 22 through 34, 40, 42, 47 through 49, 57 through 60, 62, and 67 within 14 days.

Respectfully submitted,

**EDWARD PATRICK RYAN JR.** and
**TAMMY LYNN RYAN**,
By Counsel,

/s/ George N. Sidiropolis
George N. Sidiropolis, Esq. (# 10391)
**THE INJURY RIGHTS LAW FIRM, PLLC**
1140 Main Street, 4th Floor
Wheeling, West Virginia 26003
Phone: (304) 233-7766
george@injuryrightsfirm.com

Kimball Jones, Esq. (pro hac vice)
**BIGHORN LAW**
3675 W. Cheyenne Ave., Suite 100
North Las Vegas, Nevada 89032
Phone: (702) 333 1111
kimball@bighornlaw.com

***Attorney for Plaintiffs***

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**EDWARD PATRICK RYAN JR.** and
**TAMMY LYNN RYAN**,
individually and as husband and wife,

Plaintiffs,

v.

Civil Action No.: 1:26-cv-00003

**LIBERTY MUTUAL PERSONAL INSURANCE COMPANY** and **LIBERTY INSURANCE CORPORATION**;

Hon. Thomas S. Kleeh, District Judge
Hon. Michael J. Aloi, Magistrate Judge

**CCC INTELLIGENT SOLUTIONS INC**.;

**BODYSHOPBIDS, INC**.,
d/b/a **SNAPSHEET, INC.**;

**ALLCAT CLAIMS SERVICE, LP**;

**CLAIM ASSIST SOLUTIONS** and
**CLAIM ASSIST TECHNOLOGIES LLC**,

Defendants.

---

**CERTIFICATE OF SERVICE**

---

I hereby certify that on July 15, 2026, I electronically filed and served the foregoing ***PLAINTIFFS' MOTION TO COMPEL FULL AND COMPLETE ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO LIBERTY INSURANCE CORPORATION*** via the Court's CM/ECF system on the following counsel of record:

William M. Harter, Esq. (W. Va. Bar No. 7977)
Elise N. McQuain, Esq. (W. Va. Bar No. 12253)
**FBT Gibbons LLP**
10 West Broad Street, Suite 2300
Columbus, OH 43215
(614) 464-1211 | (614) 464-1737 (fax)
wharter@fbtlaw.com
emcquain@fbtgibbons.com

***Counsel for Defendants Liberty Mutual Personal Insurance Company and Liberty Insurance Corporation***

Melvin F. O'Brien, Esq. (WV #6797)
**Dickie, McCamey & Chilcote, L.C.**
2001 Main Street, Suite 501
Wheeling, WV 26003
Phone: (304) 233-1022
Fax: (888) 811-7144
mobrien@dmclaw.com

***Counsel for Defendant Bodyshopbids, Inc., d/b/a Snapsheet, Inc.***

Michael S. Batson (pro hac vice)
Michael C. Kinton (pro hac vice)
**Ruggeri Parks Weinberg LLP**
101 Arch Street, 8th Floor
Boston, MA 02110
Tel: (617) 307-2055
Fax: (202) 984-1401
mbatson@ruggerilaw.com
mkinton@ruggerilaw.com

***Counsel for CCC Intelligent Solutions Inc.***

Raj A. Shah (WV State Bar No. 11269)
J. Miles Morgan (WV State Bar No. 5988)
**Hendrickson and Long, PLLC**
214 Capitol Street
Charleston, WV 25301
Tel: (304) 346-5500
Fax: (304) 346-5505
rshah@handl.com
jmmorgan@handl.com

***Local Counsel for CCC Intelligent Solutions Inc.***

Respectfully submitted,
**EDWARD PATRICK RYAN JR**. and
**TAMMY LYNN RYAN**,
By Counsel,

/s/ George N. Sidiropolis
George N. Sidiropolis, Esq. (# 10391)
**THE INJURY RIGHTS LAW FIRM, PLLC**
Attorney for Plaintiffs